240 A.2d 656 (1968)
William WATKINS, Appellant,
v.
UNITED STATES, Appellee.
Nos. 4477, 4478.
District of Columbia Court of Appeals.
Argued February 19, 1968.
Decided April 16, 1968.
Richard H. Speidel, Washington, D. C., appointed by this court, for appellant.
A. Lee Fentress, Jr., Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Lawrence Lippe, Asst. U. S. Attys., were on the brief, for appellee.
Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.
KELLY, Associate Judge:
These appeals pose the question of whether it was prejudicial error to assign a single counsel to represent both appellant and a co-defendant, one Alvin Gibson, at trial.
Appellant and Gibson, who is not a party to the appeals, were convicted by a jury of petit larceny and assault. The Government's evidence, presented through the testimony of the complaining witness and two eyewitnesses, was essentially that defendants attacked the complainant and took from him a jacket, which they subsequently returned, a wallet and a watch. Complainant admitted on cross-examination that because of fear of retaliation he had initially given a false name to the police, and while *657 the two eyewitnesses corroborated complainant's version of the assault, neither could say that he had seen a watch or a wallet.
A Luck[1] hearing was held at the close of the Government's case because of the Government's announced intention to use the defendants' prior records for impeachment purposes if either took the stand. In the exercise of his discretion the trial judge ruled that he would allow the use of the criminal records to test the credibility of both defendants.[2] As a result neither defendant took the stand.
The one witness called in defense was the arresting officer who corroborated testimony, already elicited, that when apprehended shortly after the alleged attack neither defendant possessed a wallet or a watch, and that the complaining witness had initially given a false name. Defense counsel rested with the statement:
Your Honor, I also would like to state for the record that the defendants have been informed thoroughly of their right to take the stand and the fact of the existence of the criminal record and because of your Honor's ruling that it could be used for the purpose of impeaching them, they have refused to take the stand. I want the record to show that they exercise their right under the Constitution not to take the stand.
An instruction on the privilege of a defendant not to testify was requested and was given by the court.
Absent an indication of record that the trial court considered the possibility of prejudice arising from the joint representation or that the court advised appellant of his rights with respect to separate counsel, we hold that there was no waiver of appellant's rights. Glasser v. United States, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed 680 (1942); Campbell v. United States, 122 U.S. App.D.C. 143, 145, 352 F.2d 359, 361 (1965). The remaining question is whether appellant was prejudiced by the joint representation. If so, he was denied effective assistance of counsel. Glasser v. United States, supra; Lollar v. United States, 126 U.S. App.D.C. 200, 376 F.2d 243 (1967). If not, any error in the failure to inform appellant of his rights with respect to separate counsel was harmless.
We know that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt", Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and this standard is the one by which we measure proof of prejudice, or the lack of it, in this case. Ford v. United States, 126 U.S.App.D.C. 346, 379 F.2d 123 (1967); Lollar v. United States, supra; Hall v. United States, D.C.App., 236 A.2d 57, 59 (1967); Lord v. District of Columbia, D.C.App., 235 A.2d 322, 323 (1967). In fact, the Government concedes that it has the burden of proving beyond a reasonable doubt that the joint representation was not prejudicial.
It is clear that there is a denial of effective assistance of counsel where one attorney represents two or more defendants with conflicting interests at trial. Glasser v. United States, supra; Campbell v. United States, supra.[3] Since appellant is unable to specify how his interests conflicted with those of his co-defendant, prejudice is alleged to inhere in a subtle matter of trial tactics dictated by the court's Luck ruling. *658 Appellant suggests that in the face of strong evidence of guilt it was essential that one or both defendants speak in defense, yet after the Luck ruling trial counsel was faced with the impossible dilemma of deciding whether to advise either or both to testify. If only one took the stand, that defendant might bear the brunt of impeachment by his past criminal record while the other profited from his testimony. On the other hand, the one who stood mute might be subject to possible stigma from his failure to testify.[4] If both took the stand, there was the risk of the effect upon the jury of cumulative joint impeachment; if neither took the stand, there would be no defense presented through their own testmony. The purported dilemma was resolved at trial by the refusal of both defendants to testify, and the defense was confined to an attempt to discredit the complaining witness and to attack the strength of the evidence of petit larceny. Appellant now argues that because of the compelling necessity for at least one defendant to testify, the risk of impeachment clearly had to be taken.
Lollar v. United States, supra, is cited in support of this argument. In that case counsel resolved a similar problem by allowing both defendants to testify, a decision which the court questioned by stating:[5]
Another indicator of possible prejudice is that counsel allowed Lollar to take the stand in spite of his criminal record, which was elicited by the prosecution for impeachment purposes. While it is clear that either Lollar or Ford had to take the stand to establish their defensethere being no other eyewitnesses for the defensethere is no suggestion that both had to testify. Thus, had it been clear that Ford was going to testify in any event, an attorney concerned solely with Lollar's interest might have decided to keep Lollar off the stand. As it was, the attorney with both defendants' interests at stake may have been motivated to call both simply to appear evenhanded in his treatment of each of his clients.
We would agree that a conflict of interest may arise from trial tactics dictated by joint representation. It is apparent, however, that in Lollar there were other indicators of possible prejudice which combined to form the basis of an informed speculation[6] that the joint representation was prejudicial. A like conclusion is not justified here. Implicit in the argument that it was essential for defendants to risk impeachment by taking the stand is the clear suggestion, from hindsight, that trial counsel made a tactical blunder in failing to call one or both to testify. Yet in the absence of a proffer of proof, we are unwilling to assume that defendants had an effective defense to offer, and we think it pure speculation to suppose that separate counsel would have given appellant any more effective advice. It is as easy to discern from defendants' refusal to testify a certain sophistication in matters of criminal procedure and a tacit approval of trial counsel's strategy as it is to arrive at an informed speculation that appellant was prejudiced by a supposed dilemma born of the court's Luck ruling. On the record in this case we are satisfied beyond a reasonable doubt that the joint representation was not prejudicial to appellant and the convictions are
Affirmed.
NOTES
[1] Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).
[2] The record does not reflect the extent of either criminal record, but no abuse of discretion is charged in this ruling of the trial court.
[3] The appointment of separate counsel in cases where a conflict of interest appears is required by the Criminal Justice Act, 18 U.S.C. § 3006A(b). It is not altogether clear from the record whether or not counsel in this case was appointed under that Act.
[4] See Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
[5] 126 U.S.App.D.C. at 204, 376 F.2d at 247.
[6] Anderson v. United States, 122 U.S.App. D.C. 277, 279, 352 F.2d 945, 947 (1965); Hall v. United States, D.C.App., 236 A.2d 57, 59 (1967).