**Paul HOLLAND, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89–851.

District of Columbia Court of Appeals.

Argued Oct. 22, 1990.

Decided Dec. 19, 1990.

**14**

Julia Leighton, Public Defender Service, with whom James Klein, Public Defender Service, and Henderson Hill, Public Defender Service, were on the brief, for appellant.

Glenn F. Ivey, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Paul Holland appeals from the denial of his motion pursuant to D.C.Code § 23–110 (1981) on the principal grounds that the trial judge accepted his guilty plea without warning him that he might be forced to pay restitution to the victim and thereafter the court imposed excessive restitution. We agree that the trial judge erred by not warning appellant of possible restitution as a part of his sentence. However, because appellant has failed to show

manifest injustice, reversal is not warranted on this ground. Further, his excessiveness claim is time barred. Accordingly, we affirm.

I

On July 29, 1985, appellant pleaded guilty to second degree burglary, D.C.Code § 22–1801(b), unauthorized use of a vehicle, *id.* § 22–2204, and felony destruction of property, *id.* § 22–403. Following the government's proffer of proof,[1] the trial judge conducted an inquiry of appellant pursuant to Super.Ct.Crim.R. 11. Appellant admitted that he had entered Laura Trexler's home without permission with the intent to steal, that he had started Trexler's car without permission, and that he drove the car into the garage door, damaging both.[2] Appellant stated that his decision to plead guilty was not premised on any agreement with the government. The government explained at the. time of the plea that "[t]he only offer which is there is that if [appellant] cooperates with the government [by testifying in a homicide case], we will make that cooperation known to the court."[3]

The trial judge inquired whether appellant understood that by pleading guilty he waived his rights associated with a jury trial, including the presumption of innocence, the right to remain silent, the right to have an attorney present and the right to confront hostile witnesses. The judge advised appellant of the maximum sentence he could receive by pleading guilty, namely

---

1. The government proffered that appellant entered Laura Trexler's unoccupied home without permission through a slightly ajar second floor bathroom window on May 11, 1985. Appellant found a spare key to Trexler's car and made several trips from the house to the garage. Appellant ultimately started the car and attempted to drive through the unopened garage door, damaging the rear end of the car as well as the garage itself. Some neighbors heard the crash, saw appellant, and called the police. Appellant fled, and was arrested two blocks away. Witnesses identified appellant as the burglar.

2. Appellant denied having taken any jewelry from Trexler's home, and the judge advised appellant that "I can't let you plead to something

you say you didn't do even though the Government says they think their evidence would show you did it." The prosecutor then agreed to dismiss the theft charge in an effort to "facilitate the plea."

3. The government had previously discussed with appellant his possible cooperation on an unrelated homicide case, and appellant had given the government "some information in connection with that matter" which "had been verified." The government had extended an offer that appellant plead guilty to second degree burglary in exchange for his testimony on the homicide case, but appellant had rejected the offer.

consecutive adult sentences of 15, 5 and 10 years. The trial judge informed appellant that the sentence could include up to $500 per charge for court costs. Appellant responded that he understood each of these consequences, and that he wished to plead guilty. The judge did not mention that restitution could also be imposed.

On September 25, 1985, the original date for the sentencing hearing, both the government and appellant requested a continuance so that the parties could discuss further whether appellant would testify in the homicide case. Trexler and two other witnesses who had come to court were permitted to allocute, but the sentencing was otherwise continued. On October 9, 1985, the trial judge sentenced appellant to a total of nine to 30 years in prison,[4] and ordered appellant to pay "restitution in the event that there is any moneys earned by [appellant] that may be paid in installments at some point after and during the course of [his] incarceration up to [his] ability to pay up to $3,500...." The judge also ordered appellant to pay $300 in court costs.

Following the denial of appellant's motion to reduce his sentence under Rule 35,[5] and after numerous other communications with the trial court, on September 10, 1987, appellant was appointed new counsel, who filed a motion, pursuant to D.C.Code § 23–110 and Super.Ct.Crim.R. 32(e), to vacate the judgment and allow withdrawal of the guilty plea on the same grounds raised in this appeal. The trial judge denied the motion without a hearing.

## II

■ Appellant argued in his motion to vacate that the trial judge violated Rule 11 by failing to warn him of possible restitution. At the time appellant was sentenced, Rule 11 did not specifically require judges to warn defendants about possible restitution before accepting a guilty plea,[6] but only to inform a defendant of "the mandatory minimum penalty provided by law, if any, and the maximum penalty provided by law." Super.Ct.Crim.R. 11(c)(1) (Sept. 1, 1985). The court has interpreted this part of the Rule to require a judge to warn a defendant of the "direct consequences" of his plea. *See Gaston v. United States,* 535 A.2d 893, 895 (D.C.1988) ("a defendant must know the direct consequences of a plea before he can plead intelligently"); *Hicks v. United States,* 362 A.2d 111, 113 (D.C.1976) (concluding that Rule 11 requires that a defendant be advised that the sentence for prison breach must be served consecutively). Therefore, we must decide whether the restitution was a "direct consequence" of appellant's plea.

Although this court has not had occasion to define precisely the line between "direct" and "collateral" consequences of a guilty plea, we have no difficulty concluding that restitution is a direct consequence about which a defendant should be warned. As the Advisory Committee to the Federal Rules explained in the note to the 1985 amendment, "restitution is deemed an aspect of the defendant's sentence." Fed.R. Crim.P. advisory committee's note (1985). It therefore "is a matter about which a defendant tendering a plea of guilty or nolo contendere should be advised." *Id.* Unlike typical examples of "collateral" matters, such as loss of civil rights, *United States v. Washington,* 341 F.2d 277, 286 (3d Cir.1965), and deportation, *Fruchtman v. Kenton,* 531 F.2d 946 (9th Cir.1976), restitution to the victim is ordered by the sentencing judge as part of the sentence. Restitution is "an automatic result of the conviction in that there [is] no subsequent

---

**4.** The trial court imposed five to 15 years for the burglary charge, one to five years for the unauthorized use of a vehicle charge, and three to ten years for the destruction of property charge. The sentences were to be served consecutively.

**5.** Appellant's Rule 35 motion sought a reduction in the sentence, arguing that it was "inequitable and unduly harsh." He did not raise any of the issues present in this appeal.

**6.** In 1986 Rule 11 was amended to require the trial court to advise the defendant, "when applicable, that the Court may also order him to make restitution to any victim of the offense...." Super.Ct.Crim.R. 11(c)(1) (1986). This amendment tracked a similar amendment to the federal rule. *See* Fed.R.Crim.Proc. 11(c)(1) (1985).

determination in a civil proceeding of the degree or amount of petitioner's liability. The result [is] absolutely part and parcel to the sentence itself." *United States v. Lott*, 630 F.Supp. 611, 613 (E.D.Va.1986). *United States v. Corn*, 836 F.2d 889, 893 (5th Cir.1988) (noting in dictum that "the unamended [Rule 11] required notice" of restitution). Accordingly, we hold that the trial judge violated Rule 11 by failing to warn appellant that restitution could be imposed.

■ The question remains whether the Rule 11 violation warrants reversal. The court has held that a defendant who raises a Rule 11 challenge to his guilty plea after sentencing must show manifest injustice in order to prevail on a collateral attack. *Hicks, supra*, 362 A.2d at 113; *Gaston, supra*, 535 A.2d at 896 (distinguishing *Hicks* as "a post-conviction collateral attack" requiring "manifest injustice"). According to the government, appellant's challenge falls short of demonstrating manifest injustice because appellant's sentence does not substantially exceed the amount of court costs about which he had been warned. In our view the difference is not insubstantial. Appellant was informed that he might have to pay court costs up to $1,500. He was actually ordered to pay costs of $300 and restitution of $3,500. Therefore, the sentence appellant received was $2,300 in excess of the maximum exposure of which he had been warned. *Cf. McCarthy v. United States*, 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969) ("prejudice inheres in a failure to comply with Rule 11"); *United States v. Timmreck*, 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (finding a "technical violation" of Rule 11 harmless in a collateral attack, where the defendant "received a sentence within the maximum described to him at the time the guilty plea was accepted").

■ On the other hand, at no place in the record has appellant alleged that if he had been properly informed of possible restitution, he would not have pleaded guilty. Such an allegation is, as the government argues, necessary in order for a defendant to establish prejudice in a Rule 11 violation. *See Lott, supra*, 630 F.Supp. at 613 (finding prejudice because "it is conceivable that the [defendant] would have decided against pleading guilty had she known the Court could order" restitution); *Bailey v. United States*, 385 A.2d 32 (D.C.), *cert. denied*, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978) (finding no manifest injustice despite erroneous advise from defense counsel, because the "bad advice was an insignificant factor in the decision to plead guilty"). Indeed, appellant's postsentencing correspondence with the trial judge requested reduced sentencing without change in the amount of restitution ordered by the judge. This belies any suggestion that the order of restitution was the factor underlying his request to withdraw his guilty plea.

Accordingly, we hold that reversal is not warranted because appellant has failed to show manifest injustice.

### III

■ Appellant further contends that the trial judge imposed excessive restitution. Although the trial judge did not make any findings with respect to the $3500 restitution order at the time of sentencing, his findings in response to appellant's § 23–110 motion made clear that the restitution order consisted of appropriately $1,500 to compensate Trexler for her out-of-pocket expenses, and $2,000 for her time and labor.[7] Appellant argues that the $2,000 award is impermissible.

7. In denying appellant's motion, the trial judge stated:

Ms. Trexler informed the court that damages of the following amount resulted from the burglary in question:

1) $760.66 worth of damage to Ms. Trexler's 1983 Chrysler;

2) $586.71 in damage to Ms. Trexler's garage door;

3) $56.89 in car rental;

4) $14,000 worth of damage to restore Ms. Trexler's home, including $55 to replace the bathroom screen and shutters.

.... The damage to the auto, garage door, bathroom window and screen, as well as the

In *Sloan v. United States,* 527 A.2d 1277, 1290 (D.C.1987), the court held that "a victim's damages must be liquidated or easily measurable to form the basis of" a restitution award under D.C.Code 16–711. Therefore, appellant has raised a colorable claim that the restitution order was not sufficiently detailed since we cannot determine the basis on which the trial judge arrived at the $2000 amount. *See id.* Nevertheless, appellant has not preserved this issue for appeal since he failed to raise it in a timely Rule 35 motion. Although D.C.Code § 23–110 contains no express time bar, the court concluded in *Robinson v. United States,* 454 A.2d 810, 813 (D.C. 1982), that "Rule 35 imposes a rational complementing limitation on the court's jurisdiction" to entertain collateral attacks under D.C.Code § 23–110.[8] *Robinson* held that a trial judge who "imposes a sentence within the limits authorized by the relevant statute, but commits a procedural error in doing so" has imposed a sentence in an illegal manner. *Id.* The court thus refused to consider a § 23–110 motion which alleged a procedural error in sentencing because it was filed more than 120 days after the conviction became final. *Id.*

Appellant's argument that the restitution amount was excessive is best characterized as a claim that the sentence was illegally imposed, not that the sentence was itself illegal. Although certain types of harm to the victim cannot form the basis for a restitution award, *see Sloan, supra,* 527 A.2d at 1288–90 (holding that a restitution award for pain, suffering and disfigure-

ment was improper), appellant conceded at oral argument that the value of a victim's time and labor could be compensable under D.C.Code § 16–711 if adequately proved at the sentencing hearing. Thus, the trial judge's error arose because of a failure of proof of the victim's damages, and not because he lacked authority to order restitution. Since such a challenge goes to the manner in which the sentence is imposed, and not to the legality of the sentence itself, appellant's motion, filed more than 120 days after sentencing, is time barred.[9]

Accordingly, the judgment is affirmed.[10].

---

cost of obtaining a car rental, totals $1,423.26. The Court, while finding that Ms. Trexler's estimate of the cost of her time and efforts to restore her home were excessive as an appropriate basis for restitution, imposed an additional amount of $2,000 as restitution to compensate the victim for her own time and labor in this effort.

8. Rule 35 provides:
(a) *Correction of sentence.* The Court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.
(b) *Reduction of sentence.* A motion to reduce a sentence may be made not later than 120 days after the sentence is imposed.... Super.Ct.Crim.R. 35.

9. Since appellant's challenge to the amount of restitution is barred under *Robinson,* we need not address the government's other contention that appellant's claim is barred because he failed to raise this issue on direct appeal. *See Head v. United States,* 489 A.2d 450 (D.C.1985).

10. Appellant's contention that he should be allowed to withdraw his plea because the government breached its "promise to inform the court at sentencing or after if [appellant] cooperated in an unrelated homicide" is foreclosed by the record. His only complaint is that the prosecutor "failed to reiterate" appellant's earlier cooperation, and we find no basis in the record to indicate that the prosecutor promised to "reiterate" anything.